IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| RACHEL KANNADAY, | ) | |
| | ) | |
| Plaintiff-Garnishor, | ) | |
| | ) | |
| v. | ) | Case No. 09-2255-JWL |
| | ) | |
| CHARLES BALL, Special Administrator | ) | |
| of the Estate of Stephanie Hoyt, deceased, | ) | |
| | ) | |
| Defendant, | ) | |
| v. | ) | |
| | ) | |
| GEICO INDEMNITY INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Garnishee. | ) | |

## **ORDER**

Currently before the court is the renewed motion of the plaintiff-garnishor, Rachel Kannaday, for an order ruling that her lawyer, Paul Hasty, Jr., may communicate directly (i.e., not through counsel) with Charles Ball (**doc. 98**). Mr. Ball is an attorney serving as the special administrator of the Estate of Stephanie Hoyt, Deceased; he is a defendant in the Kansas state tort case that underlies the instant garnishment action. The court denied plaintiff's first motion on this subject because the parties' briefs were inadequate, lacking in citation to legal authority and focusing far more on the merits of the two cases than on the issue at hand (doc. 94). The briefs on the instant motion are more complete, and the court

will proceed to rule on plaintiff's request.[1]

Plaintiff seeks an order authorizing her counsel to communicate directly with Mr. Ball. Plaintiff states that Mr. Ball is a witness in the instant garnishment action because he has information relevant to the defense asserted by the garnishee, GEICO Indemnity Insurance Company, specifically, that there was collusion between Mr. Ball and Mr. Hasty in the underlying tort action (*see* doc. 91 at 12–13). GEICO opposes the motion, arguing that Rule 4.2 of the Kansas Rules of Professional Conduct generally prohibits an attorney from directly communicating with a person the attorney knows to be represented by another lawyer in the matter. GEICO further notes that plaintiff has already deposed Mr. Ball and asked about the alleged collusion.

> Rule 4.2 states,
>
> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, *unless* the lawyer has the consent of the other lawyer or is *authorized to do so by law or a court order*. (Emphasis added).[2]

It is undisputed that Mr. Ball is not represented by counsel in the instant garnishment case but is represented by counsel in the underlying state tort case. The parties disagree about whether Rule 4.2's use of the term "in the matter" refers solely to the case (here, the instant

---

[1] In the future, counsel should put forth their best efforts in their first set of briefs; they should not assume that the court will permit them two bites at the apple. The court expects more, especially from experienced attorneys.

[2] Kansas, like most states, adopted this rule from the American Bar Association (ABA) Model Rules of Professional Conduct. *See Hammond v. City of Junction City, Kan.*, No. 00-2146-JWL, 2002 WL 169370, at *3 n.3 (D. Kan. Jan. 23, 2002).

garnishment action), or whether it also refers to issues that might arise in the case (here, whether there was collusion in the underlying tort action). As the parties note, there is a paucity of authority addressing this question—the court has found no applicable case involving two closely related lawsuits in which a person is represented in one but not the other.

The court finds it unnecessary, however, to wade into these uncharted waters. Rule 4.2 provides that, even if a person is represented by another lawyer "in the matter" (whatever definition is given that term), a lawyer may nonetheless communicate with the person if the lawyer obtains a court order authorizing him to do so. Although the standards a court should apply in determining whether to issue an order authorizing direct communication are not clearly set out (either in the rule itself or in caselaw), it is apparent that the overriding consideration should be whether the communication will result in overreaching by the lawyer upon a lay person.

> Comment 1 to Rule 4.2 explains,
>
> This Rule contributes to the proper functioning of the legal system by protecting a person who has chosen to be represented by a lawyer in a matter against possible overreaching by other lawyers who are participating in the matter, interference by those lawyers with the client-lawyer relationship and the uncounselled disclosure of information relating to the representation.

Courts across the country (interpreting identical rules also taken from ABA Model Rule 4.2) have recognized the primary purpose of the rule is to prevent overreaching in an attorney's

dealings with lay persons.³ Thus, in *In re Grievance Proceeding*, the court held that Rule 4.2 was "simply not implicated" when an attorney engaged in direct communication with the in-house counsel of a corporation represented by outside counsel.⁴ The court reasoned that communication with an attorney "generally will not raise the same concerns" as communication with a lay person because the attorney's "training in the law helps ensure a level playing field of legal expertise in communications with opposing counsel."⁵

The court finds this reasoning persuasive in the instant case, given that Mr. Ball is not the typical lay-person witness. Rather, like the in-house counsel in *In re Grievance Proceeding*, Mr. Ball is an attorney—legally trained, on a level playing field with Mr. Hasty, and less likely to succumb to possible overreaching than the average lay person. There is simply no indication that the purpose behind Rule 4.2 is implicated by plaintiff's instant

---

³*See, e.g., In re Disciplinary Proceedings Against Haley*, 126 P.3d 1262, 1266 (Wash. 2006) (noting that the purpose of the rule "is to prevent situations in which a represented party is taken advantage of by adverse counsel" (internal citations and quotations omitted)); *In re Grievance Proceeding*, No. 3:01GP6, 2002 WL 31106389, at *2 (D. Conn. July 19, 2002) ("The rule's primary concern is to avoid overreaching caused by disparity in legal knowledge; it is designed to protect lay parties."); *Wagner v. City of Holyoke*, 183 F. Supp. 2d 289, 291 (D. Mass. 2001) (noting that the rule is "designed to preserve the mediating role of counsel on behalf of their clients and to protect clients from overreaching by counsel for adverse interests" (internal quotations and citations omitted)); *In re Air Crash Disaster Near Roselawn, Ind. on Oct. 31, 1994*, 909 F. Supp. 1116, (N.D. Ill. 1995) (holding that Rule 4.2 "recognizes that without such a Rule the professionally trained lawyer may, in many cases, be able to win, or in the extreme case coerce, damaging concessions from the unshielded layman" (internal quotations and citations omitted)).

⁴2002 WL 31106389, at *3.

⁵*Id.*

request for authorization to communicate with Mr. Ball. Moreover, GEICO has not suggested that it would be injured if Mr. Hasty directly communicates with Mr. Ball. Therefore, the court grants plaintiff's motion and authorizes Mr. Hasty's direct communication with Mr. Ball.

The court sees no reason, however, why counsel for GEICO, at his option, should not be present at any interview that Mr. Hasty conducts with Mr. Ball. Thus, in the scheduling of any interview, Mr. Hasty should give counsel for GEICO the opportunity to be on the phone call with Mr. Ball so that an appointment can be set at a time that is mutually agreeable to all three persons.

To be clear, the court is *not* ruling that Mr. Ball has any obligation to speak to Mr. Hasty. Indeed, given GEICO's strident allegations concerning Mr. Ball's collusive conduct, it probably would be prudent for Mr. Ball to politely decline any invitation to speak to either of the lawyers in this garnishment proceeding absent a trial subpoena specifically requiring him to do so. That is, were Mr. Ball to ignore GEICO's protests and submit to an ex parte interview by Mr. Hasty, GEICO can be expected to assert that's further evidence of collusion. And even if Mr. Ball were to submit to an interview by Mr. Hasty with GEICO's lawyer also present, Mr. Ball stands at risk of it being suggested at trial (by one or both parties) that something he supposedly said during the interview is at odds with his sworn deposition testimony. Therefore, upon contacting Mr. Ball, Mr. Hasty will immediately advise him that he may consent to an interview, may refuse to be interviewed, or may

consent to be interviewed only in the presence of his own counsel. In addition, Mr. Hasty shall inform Mr. Ball that, should the interview take place, Mr. Ball may terminate the interview at any time.

The court wishes to avoid any further disputes between plaintiff and GEICO about what the rules of engagement now are with regard to Mr. Hasty contacting Mr. Ball. Accordingly, the court is mailing a courtesy copy of this order directly to Mr. Ball.

IT IS SO ORDERED.

Dated this 19th day of March, 2010, at Kansas City, Kansas.

                                              s/ James P. O'Hara
                                              James P. O'Hara
                                              U.S. Magistrate Judge

cc:    Charles Ball, Esq. (via U.S. Mail)
       1300 N. 78th St., Ste. 202
       Kansas City, KS  66112–2406