IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| RACHEL KANNADAY, | ) | |
| | ) | |
| Plaintiff Garnishor, | ) | |
| | ) | |
| v. | ) | Case No. 09-2255-JWL |
| | ) | |
| CHARLES BALL, Special Administrator of the Estate of Stephanie Hoyt, deceased, | ) ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GEICO INDEMNITY INSURANCE COMPANY, | ) ) | |
| | ) | |
| Garnishee Defendant. | ) | |
| | ) | |
| _____ | ) | |

## **MEMORANDUM AND ORDER**

This action arose out of an automobile accident in which plaintiff was injured while a passenger in a vehicle driven by Stephanie Hoyt, who perished in the accident. Plaintiff pursued a lawsuit in state court against Charles Ball, acting as administrator of Ms. Hoyt's estate, which resulted in a judgment in favor of plaintiff. In the present garnishment action, plaintiff seeks to recover from garnishee defendant Geico Indemnity Insurance Company ("Geico"), Ms. Hoyt's liability insurer, the excess of that judgment over Geico's policy limits, on the basis that Geico acted negligently or in bad faith in defending and refusing to settle within policy limits plaintiff's suit against the estate.

This matter is presently before the Court on plaintiff's motions for summary

judgment on its claim and on Geico's affirmative defenses (Doc. ## 81, 99); Geico's motion for summary judgment (Doc. # 95); and Geico's motion to strike plaintiff's motion relating to Geico's affirmative defenses (Doc. # 104). The Court concludes that questions of material fact remain for trial and that neither party is entitled to judgment as a matter of law. Accordingly, the Court **denies** the parties' summary judgment motions. Geico's motion to strike is also **denied**.

### I.    Background and Undisputed Facts

The automobile accident that gave rise to this action occurred on July 13, 2005, on an interstate highway in Kansas. Plaintiff was a passenger in a vehicle driven by decedent, and plaintiff and the two other passengers, Genevieve Gold and Sharon Wright, suffered injuries in the accident. Geico does not dispute that decedent was at fault in causing the accident. At the time of the accident, Geico provided liability insurance coverage for the vehicle under a policy issued to decedent, with bodily injury liability limits of $25,000 per person and $50,000 per accident. Geico learned quickly that the passengers' medical expenses would far exceed policy limits, and it received hospital lien notices for over $158,000 for plaintiff and over $95,000 for Ms. Wright. Ms. Gold's initial medical expenses totaled $44,000. Plaintiff had suffered a fractured pelvis, fractured vertebra, a broken arm and hand, internal damage, and a spinal cord injury. Geico informed decedent's father that the liability from the accident would far surpass the policy limits.

In September 2005, Ms. Gold's attorney submitted a demand to Geico for the policy limits. In October 2005, Ms. Gold's attorney proposed that Geico split the $50,000 accident limits among the three passengers evenly. Nonetheless, in November 2005, Geico offered Ms. Gold the per-person policy limits of $25,000, and further offered plaintiff and Ms. Wright $12,500 each out of the remaining $25,000 available under the policy. On January 19, 2006, plaintiff's attorney demanded the full $25,000 limits to settle plaintiff's claim. On February 24, 2006, plaintiff's attorney again demanded the policy limits, but he withdrew that demand three days later without a response from Geico.

On March 17, 2006, plaintiff filed a lawsuit against the estate in the District Court for Wyandotte County, Kansas, and also petitioned for Mr. Ball to be named as special administrator for the estate. On March 23, 2006, Geico filed an interpleader action in federal district court and subsequently tendered the remaining $25,000 (after the $25,000 settlement with Ms. Gold) to the Court registry. Although Ms. Wright was named in the interpleader suit, she did not respond to or appear in that action. In November 2006, the federal court enjoined any further efforts by plaintiff to recover the insurance proceeds from Geico, and in February 2008, the court awarded the $25,000 in proceeds to the hospital in partial satisfaction of its lien against plaintiff.

Pursuant to its duty to provide a defense under the policy, Geico retained counsel—the same attorney that represented it in the interpleader action—to represent the estate in the state-court actions brought by plaintiff and, later, by Ms. Wright. In

3

August 2006, plaintiff's attorney sent a proposed settlement agreement to the estate's counsel, under which the estate would concede liability, plaintiff would establish damages in an ex parte hearing before the state court, and the court would determine damages and issue a judgment, which plaintiff could not attempt to collect from the estate. Counsel for the estate forwarded the proposed agreement to Mr. Ball, the administrator, who signed and returned the agreement without consultation with counsel. Estate counsel did not send the signed agreement to plaintiff's counsel, however. At his deposition in December 2007, Mr. Ball signed a slightly altered version of the same proposed settlement agreement for plaintiff's counsel. In March 2008, pursuant to a discovery request from plaintiff, estate counsel produced a copy of the first agreement signed by Mr. Ball.

On March 17, 2009, during the period while the parties were preparing for a trial scheduled for December 2009, plaintiff signed a copy of the first settlement agreement signed by Mr. Ball, and the next day, plaintiff's counsel presented the agreement to the state court ex parte. The state court subsequently conducted an ex parte hearing concerning damages and awarded approximately $6,900,000 to plaintiff. Plaintiff then filed an ex parte motion to modify the judgment because of a calculation error, and on April 28, 2009, the court issued an amended judgment in the amount of $7,219,064.37. Counsel retained by Geico for the estate is appealing that judgment to the Kansas Court

of Appeals.[1]

## II.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477

---

[1]Neither party has raised the issue of the appropriateness of the litigation of this suit while the state-court appeal of plaintiff's judgment remains pending.

U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III. <u>Analysis of Summary Judgment Motions</u>

#### A. <u>*Lack of Reservation of Rights*</u>

In this action, plaintiff garnishor, standing in the shoes of the estate, Geico's insured, seeks to recover from Geico the amount by which her state-court judgment exceeds Geico's policy limits, based on the claim that Geico acted negligently or in bad faith in its defense and failure to settle plaintiff's claim against the estate within the policy limits. Plaintiff first argues that she is entitled to judgment as a matter of law on her garnishment claim because Geico failed to make a reservation of rights and inform

its insured that it was not liable for any amount by which a judgment against the estate exceeded the policy limits. Thus, plaintiff argues that Geico waived and is estopped from relying on those policy limits. Plaintiff cites only a single case, *Henry v. Johnson*, 191 Kan. 369, 381 P.2d 538 (1963), in support of its position.

The Court rejects this argument as a basis for summary judgment. Plaintiff has not shown under Kansas law that the requirement of a reservation of rights applies to the application of policy limits.

In *Henry*, the Kansas Supreme Court stated the relevant rule as follows:

> It is a well established rule that where an insurance company under a liability policy takes charge of the only defense which may then be imposed to an action on which liability rests . . ., it will be estopped from thereafter questioning the claim because it was beyond the terms of the policy or because of a breach of a noncoverage clause, unless it gives notice of its right to set up the defense of noncoverage under an adequate and proper nonwaiver and reservation of rights notice to the insured.

*Id.* at 376, 381 P.2d at 544 (citations omitted). Thus, the court in *Henry* stated the rule as applying to the assertion of the defense of non-coverage. Similarly, in *Snedker v. Derby Oil Co.*, 164 Kan. 640, 192 P.2d 135 (1948), on which the *Henry* court relied, the court recognized the general rule that "a liability insurer which assumes the defense of an action against the insured may save itself from the bar of waiver or estoppel in a subsequent action upon the policy if, in the action against the insured, it clearly disclaims liability under the policy, and gives notice of its reservation of a right to set up the *defense of noncoverage*." *Id.* at 644, 192 P.2d at 138 (emphasis added); *see also* 81 A.L.R. 1326 (1932) (cited in *Henry* and *Snedker*) (rule applies in context of defense of

non-coverage).

In the present case, Geico did not deny coverage or disclaim its duty to defend its insured, but instead merely seeks to enforce the contractual policy limits. Thus, this case presents an obvious and relevant distinction from the application of the reservation-of-rights requirements to a defense of non-coverage. In the latter case, when the insurer undertakes the defense, it acts inconsistent with the position that there is no coverage—and thus, no duty to defend—under the policy; thus, the insurer must reserve its rights to avoid waiver or estoppel arising from that inconsistency. In this case, Geico's assumption of the defense of its insured was not inherently inconsistent with its assertion of the policy limits; thus, no issue of waiver or estoppel arises, and the purpose of the reservation-of-rights rule is not implicated. Plaintiff has not cited to any Kansas authority supporting application of the rule in the context of the assertion of policy limits.

In *Sapp v. Greif*, 1998 WL 165116 (10th Cir. Apr. 3, 1998) (unpub. op.), the Tenth Circuit lent credence to this distinction in rejecting a similar argument based on *Henry*, as follows:

> The cases on which plaintiffs rely, which speak in terms of both waiver and estoppel, contemplate a situation in which the insurer has an obligation to defend the insured. Thus, the rule requiring the insurer to specify what rights it is reserving allows the insured to "make an intelligent decision whether to consent to the assumption of his defense and the control of his lawsuit by the carrier, or to take another course." *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, 934 P.2d 65, 84 (Kan. 1997) (quoting *Bogle [v. Conway*, 199 Kan. 707, 433 P.2d 407, 412 (1967)]) . . . . The policy here . . . did not contain a

8

> defense obligation . . . . Thus, the rule does not appear to be applicable
> here.

*Id.* at \*6 (citation omitted). Thus, the Tenth Circuit recognized that the purpose of the

rule is not implicated, and the rule therefore does not apply, if the duty to defend is not

disputed.

The Tenth Circuit in *Sapp* provided another basis for refusing to apply the rule

in this case. The court noted that "under Kansas law, 'waiver cannot be used to expand

the coverage of an insurance contract; it applies only to forestall the forfeiture of a

contract.'" *Id.* (quoting *Hennes Erecting Co. v. National Union Fire Ins. Co.*, 813 F.2d

1074, 1078 (10th Cir. 1987), and further citing *Western Food Prods. Co. v. United States*

*Fire Ins. Co.*, 10 Kan. App. 2d 375, 699 P.2d 579, 584 (1985)). The court thus

concluded that applying the waiver doctrine to a late-notice defense would improperly

extend the period of coverage under the policy. *See id.* Similarly, in the present case,

applying the waiver rule would not merely forestall forfeiture of the policy, but would

impermissibly expand coverage under the Geico policy beyond the contractually-agreed

policy limits.

Finally, the Court notes that at least one leading treatise has flatly rejected

plaintiff's attempt to apply this waiver rule to enforcement of the policy limits:

> While the defense of the action by an insurer without reservation
> of rights as to its defenses may constitute a waiver of the insurer's
> defenses, it does not rewrite the policy so as to remove the maximum on
> the coverage provided. Hence, the insurer, by electing to defend rather
> than to settle, does not obligate itself to pay any judgment that may be
> recovered, even if it exceeds in amount the specified indemnity, but

> merely becomes bound to indemnify the insured up to the amount specified in the policy.

14 *Couch on Insurance 3d* § 202.74 (2005) (footnote omitted).

For these reasons, the Court rejects this basis for summary judgment in favor of plaintiff.

Plaintiff also suggests that Geico, by failing to make a reservation of rights, waived any defense based on a breach by the insured of a contractual duty of cooperation. Such an argument would not necessarily founder on the same distinction noted above, as Geico's continued assumption of the defense after the alleged breach by its insured could be seen as inconsistent with the position that the breach relieved Geico of any contractually-based duties, including the duty to pay bad faith damages. The Court cannot resolve this issue as a matter of law, however, in light of the parties' failure to address adequately in their briefs this issue of the application of the waiver doctrine to the lack-of-cooperation defense, including the issues of whether any waiver would also apply to the defense of a breach of fiduciary duty in failing to cooperate and whether plaintiff must show prejudice to establish the waiver of the defense. *Compare, e.g.*, *Golf Course Superintendents Ass'n of Am. v. Underwriters at Lloyd's of London*, 761 F. Supp. 1485, 1493 (D. Kan. 1991) (prejudice required), *with Bogle v. Conway*, 199 Kan. 707, 714, 433 P.2d 407, 413 (1967) (prejudice may be assumed).

B.    *Merits of Bad Faith / Negligence Claim*

Under Kansas law, a judgment creditor (such as plaintiff in this case) may stand in the shoes of the judgment debtor (here, the estate) and proceed in garnishment against the debtor's insurer (Geico), including with respect to a claim against the insurer for the amount of the judgment in excess of the policy limits based on a failure to settle within policy limits. *See Moses v. Halstead*, 581 F.3d 1248, 1254 & n.2 (10th Cir. 2009) (citing Kansas cases). Although the insurer's duties are contractually-based, the breach of those duties is determined under traditional tort standards; thus, an insurer may be held liable for negligence or bad faith to its insured. *See id.* at 1251. The non-exclusive list of factors to be considered in determining whether an insurer acted negligently or in bad faith in refusing an offer to settle within policy limits includes the following: the strength of the injured claimant's case on liability and damages; the amount of financial risk to which each party is exposed in the event of a refusal to settle; and any other relevant factor. *See Bollinger v. Nuss*, 202 Kan. 326, 338, 449 P.2d 502, 512 (1969), *quoted in Roberts v. Printup*, 595 F.3d 1181, 1187 (10th Cir. 2010).

In seeking summary judgment, plaintiff argues as a matter of law that Geico acted negligently or in bad faith in failing to settle plaintiff's claim against the estate for the policy limits. Plaintiff notes that, even after she withdrew her demand, Geico failed to offer her the limits, even after Ms. Wright failed to respond to the interpleader action. Plaintiff argues that Geico acted unreasonably in basing its initial settlement offers on the amount of underinsured motorist (UIM) coverage available to each passenger-

potential claimant.  Finally, plaintiff argues that a conflict of interest developed, with Geico using the same attorney both to defend the estate and to represent Geico in the interpleader action, and that Geico placed its own interests over those of the estate in seeking to distribute the policy limits without ensuring that the estate received a release from plaintiff.

The Court rejects this argument that plaintiff is entitled to judgment as a matter of law, and concludes that Geico's conduct with respect to settlement presents a question of fact for trial. *See Bollinger*, 202 Kan. at 341, 449 P.2d at 514 ("Whether an insurer in defending a claim and refusing an offer of settlement within policy limits was negligent or acted in bad faith is a question for the trier of fact in each case.").  Geico has presented evidence that it quickly tendered the entirety of the policy limits in attempting to settle with all three of the potential claimants at one time.  *See, e.g.*, *Castorena v. Western Indem. Co.*, 213 Kan. 103, 111-12, 515 P.2d 789, 795 (1973) ("a liability insurer may in good faith settle part of multiple claims arising from the negligence of its insured even though such settlements deplete or exhaust the policy limits of liability so that the remaining claimants have little or no recourse against the insurer").  The propriety of Geico's method of approaching settlement with the claimants, including the consideration of UIM coverage and the value of obtaining a release for the estate, presents a question of fact, particularly in light of plaintiff's withdrawal of her second settlement demand within days, the lack of assets and the estate's inability to contribute to any settlements, and Geico's argument concerning the non-claim statute.  *See infra*

Part III.C.

Summary judgment for plaintiff is also not warranted because, as discussed below, issues still remain for trial on particular defenses that Geico argues relieves it of liability for the excess judgment, including the estate's alleged breach of contractual and fiduciary duties of cooperation, *see infra* Part III.D, and the reasonableness of the estate's settlement with plaintiff, *see infra* Part III.F.

Plaintiff also argues that Geico acted negligently or in bad faith in failing to accept the proposal of Ms. Gold's attorney to divide the total proceeds evenly among the three passengers. Plaintiff has not shown, however, that Geico's decision to offer Ms. Gold $25,000 caused the excess judgment against the estate as a matter of law. *See, e.g.*, *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 673-74 (10th Cir. 2007) (Kansas law requires causal link between insurer's conduct and excess judgment) (citing, *inter alia*, *Sours v. Russell*, 25 Kan. App. 2d 620, 967 P.2d 348, 351-52 (1998)). Such causation presents a question of fact for trial, and the Court therefore declines to award plaintiff summary judgment on this basis.

The Court also rejects Geico's request for summary judgment based on the merits of the allegation of bad faith or negligence with respect to settlement with plaintiff. A question of material fact arises from plaintiff's evidence that Geico misunderstood both Kansas law and the available UIM coverages while exploring settlement; Geico's failure to pursue settlement with plaintiff for the policy limits even during the interpleader action; the known liability of decedent in the accident; the substantial injuries suffered

by plaintiff; and questions about the strength of Geico's non-claim defense under Kansas precedent, *see infra* Part III.C. Simply put, based on the evidence presented and alternately resolving all inferences in favor of the two parties, a reasonable trier of fact could decide the issue of Geico's bad faith or negligence with respect to settlement with plaintiff in favor of either side, and an issue of fact therefore remains for trial.

Plaintiff also alleges bad faith and negligence by Geico in defending the estate outside the context of settlement with plaintiff, and plaintiff seeks summary judgment on those claims as well. Plaintiff has devoted little analysis to such claims in her briefs, however, and plaintiff has utterly failed to show causation as a matter of law with respect to those claims. Accordingly, the Court denies plaintiff's motion for summary judgment on her non-settlement claims. Geico limited its own summary judgment arguments to plaintiff's refusal-to-settle claims; therefore, the Court also denies Geico's motion for summary judgment to the extent it applies to plaintiff's non-settlement claims, which remain for trial.

### C. *Applicability of Non-Claim Statute and Lack of Estate Assets*

Geico also argues, as a basis for summary judgment, that because no estate was opened for decedent within six months of her death, plaintiff's claim against the estate is barred by the Kansas non-claim statute, K.S.A. § 59-2239. Thus, Geico argues that because there was no risk of a judgment against the estate, *see In re Estate of Tracy*, 36 Kan. App. 2d 401, 404, 140 P.3d 1045, 1048 (2006) (failure to comply with non-claim

14

statute deprives court of jurisdiction), the estate could not have suffered any damages as a matter of law from a failure to settle for the policy limits.

The Court rejects this argument. First, Geico has not provided any authority or otherwise shown under Kansas law that such a defense (for example, a lack of jurisdiction or the application of a non-claim statute or statute of limitation) bars as a matter of law a garnishment claim based on a failure to settle for policy limits. At most, the strength of such a defense would be a factor for the insurer (and subsequently, the court) in evaluating the settlement situation—just as the insurer must consider the strength of the insured's defense on the merits or any other defense. Indeed, in the present case, despite the estate's assertion of a defense based on the non-claim statute, the state court nonetheless entered a judgment against the estate. That judgment might yet be overturned on appeal, but the state court's judgment demonstrates that the possibility of the failure of this defense should be considered by the insurer.

Moreover, despite its protestations, Geico has not shown that the non-claim defense is so strong in this case as to be considered a sure winner. The non-claim statute provides as follows:

> (1) All demands . . . against a decedent's estate, whether due or to become due, whether absolute or contingent, . . . shall be forever barred from payment unless the demand is presented within the later of: (a) four months from the date of first publication of notice . . .; or (b) if the identity of the creditor is known or reasonably ascertainable, 30 days after actual notice was given . . . . <u>No creditor shall have any claim against or lien upon the property of a decedent</u> other than liens existing at the date of the decedent's death, <u>unless a petition is filed</u> for the probate of the decedent's will . . . or <u>for the administration of the decedent's estate</u> . . . <u>within six</u>

months after the death of the decedent and such creditor has exhibited the creditor's demand in the manner and within the time prescribed by this section, except as otherwise provided by this section.

(2)  Nothing in this section shall affect or prevent the enforcement of a claim arising out of tort against the personal representative of a decedent within the period of the statute of limitations provided for an action on such claim.  For the purpose of enforcing such claims, the estate of the decedent may be opened or reopened, a special administrator appointed, and suit filed against the administrator within the period of the statute of limitations for such action.  Any recovery by the claimant in such action shall not affect the distribution of the assets of the estate of the decedent unless a claim was filed in the district court within the time allowed for filing claims against the estate under subsection (1) . . . .

K.S.A. § 59-2239 (emphasis added).  Thus, the non-claim statute bars claims against a decedent's property unless a petition for the opening of the estate is filed within six months of death, "except as otherwise provided by this section;" provides an exception for the filing of tort claims within the applicable statute of limitations; but then states that any such tort recovery shall not affect the distribution of the assets of the estate unless a claim was filed with the time allowed for filing claims under subsection (1).  With respect to this last provision, the statute does not make clear whether the reference to subsection (1) is only to the four-month and 30-day deadlines for presenting demands or is also to the six-month deadline for petitioning for the administration of an estate. In at least two cases, a court has essentially rejected Geico's interpretation and instead interpreted the non-claim statute to permit a tort claim against an estate despite the plaintiff's failure to open an estate within six months of the decedent's death.  *See Gatewood v. Bosch*, 2 Kan. App. 2d 474, 478-79, 581 P.2d 1198, 1203 (1978) (plaintiff

could have proceeded by suing administrator directly within the tort statute of limitations); *Bridges v. Bentley*, 1989 WL 134939, at *3 (D. Kan. Oct. 4, 1989) (following *Gatewood* interpretation in allowing tort claim under exception in non-claim statute; rejecting argument that such interpretation made no sense because it made the statute redundant to the ordinary tort statute of limitation).

The Court need not interpret the non-claim statute at this time or predict how the Kansas Court of Appeals will rule on the estate's appeal in the related state-court case.[2] The point, at this stage, is that this defense against liability of the estate is not so strong as to make Geico's failure to settle for the policy limits reasonable as a matter of law. Accordingly, the Court rejects this basis for summary judgment asserted by Geico.

Similarly, the lack of any assets in the estate in this case—which would mean that the estate could not suffer any damage from a failure to settle within policy limits—does not automatically bar plaintiff's claim. As Geico concedes, Kansas has rejected the pre-payment rule, which makes actual payment of the excess judgment a condition precedent to a bad faith claim; Kansas has instead adopted the judgment rule, which allows the insured to maintain such a claim even while insolvent. *See Farmers Ins. Exch. v. Schropp*, 222 Kan. 612, 622-24, 567 P.2d 1359, 1368-69 (1977). Thus, an insurer still has a duty to defend and to act reasonably and in good faith, even if the insured is

---

[2]The Court notes, for example, that in neither of the two cited cases did the court address the provision in subsection (2) that such recoveries shall not affect the distribution of the estate assets.

insolvent or otherwise judgment-proof, including in instances where the insured has entered into a covenant with the claimant prohibiting execution against the insured. *See Glenn v. Fleming*, 247 Kan. 296, 316-17, 799 P.2d 79, 91-92 (1990). The insurer can be held liable for an excess judgment on a bad faith claim even if the insured has no assets.

The lack of assets *may* be relevant to other issues, however. For instance, in *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, 934 P.2d 65 (1997), the court held that the insured's solvency was relevant to the determination of whether a settlement executed by the insured was reasonable, as an insolvent insured would have less incentive to act reasonably, and the insolvency could show that the settlement was not entered into at arm's length. *See id.* at 839, 934 P.2d at 86. In *McNally v. Nationwide Ins. Co.*, 815 F.2d 254 (3d Cir. 1987), a case cited by plaintiff here, the Third Circuit confirmed this distinction, noting that although, as shown by various cases, an insurer cannot argue that an insolvent insured suffers no harm (as he still suffers harm from the judgment itself), the insurer need not ignore the lack of assets in trying to figure out how claimants will act regarding settlement offers. *See id.* at 263.

Accordingly, in the present case, the lack of assets in the estate does not bar plaintiff's claim against Geico, but that fact may be relevant to other issues and thus may contribute to the existence of fact questions that preclude summary judgment.

D.      *Defense of Breach of Duty of Cooperation*

Geico also seeks summary judgment based on its assertion that its insured, the estate, breached both its contractual duty to cooperate with Geico and its fiduciary duty to Geico. *See Bollinger*, 202 Kan. at 332, 449 P.2d at 509 (insurer and insured have mutual fiduciary relationship entailing duties to exercise reasonable care with respect to defense and settlement) (quoting *Bennett v. Conrady*, 180 Kan. 485, 305 P.2d 823, syl. ¶ 5 (1957)). Geico argues, as a matter of law, that the estate breached those duties and failed to cooperate with Geico when Mr. Ball entered into the settlement agreement with plaintiff, without consultation with counsel, even though the estate had no assets and plaintiff had failed to open the estate within six months of death.

The Court concludes that Geico has not established this defense as a matter of law. First, as discussed above, an issue remains concerning whether Geico waived this defense by failing to make a reservation of rights. *See supra* Part III.A. Moreover, whether plaintiff breached this duty here presents a question of fact. As noted above, the non-claim statute does not provide a sure bar to liability here, *see supra* Part III.C, and decedent's liability was a given in this case. Thus, a reasonable factfinder could find that plaintiff did not fail to cooperate to Geico's detriment by choosing to insulate itself from any execution attempts and a trial and by allowing the court to determine plaintiff's damages based on evidence presented. For these reasons, the Court rejects this basis for summary judgment in Geico's favor.[3]

---

[3]Plaintiff also argues that any breach of a duty of cooperation by the estate was
(continued...)

E.     *Validity of Settlement Agreement*

Geico argues that it is entitled to summary judgment on plaintiff's claim because the settlement agreement between plaintiff and the estate is invalid. Specifically, Geico argues that the agreement is void for lack of consideration; that plaintiff failed to sign the same version of the agreement signed by Mr. Ball and presented to the state court; that too much time elapsed between Mr. Ball's offer (by signing the proposed agreement) and plaintiff's acceptance (by signing); that because the agreement signed by Mr. Ball that was presented to the state court was produced in discovery, Mr. Ball's offer was not presented to plaintiff; and that plaintiff failed to communicate her acceptance of Mr. Ball's offer to Mr. Ball or counsel for the estate.

Geico was not a party to the settlement agreement, however, and Geico has not provided any authority that would allow it to challenge the validity of that agreement in this context. Moreover, even if Geico did have such standing, the Court would conclude that these alleged bases for invalidity present questions of fact for trial. For instance, Mr. Ball's desire to avoid a trial in the face of clear liability could support a finding of consideration. The evidence also supports a reasonable finding that Mr. Ball was accepting plaintiff's offer (instead of merely making an offer to plaintiff) when he signed

---

[3](...continued)
excused by Geico's prior material breach in failing to settle within policy limits, citing *Youell v. Grimes*, 217 F. Supp. 2d 1167 (D. Kan. 2002) (Lungstrum, J.). In *Youell*, however, this Court found no support for the position that a prior breach other than a wrongful denial of coverage could relieve a party of its duty of cooperation. *See id.* at 1175-76.

the agreement, and that a proper meeting of the minds occurred here. Thus, there is no basis for summary judgment in favor of Geico.

### F. Reasonableness of Settlement Agreement and Judgment

Plaintiff agrees that her settlement and resulting judgment must have been reasonable and devoid of fraud or collusion for her to recover here. In *Glenn v. Fleming*, 247 Kan. 296, 799 P.2d 79 (1990), the court expressed "concern over the reasonableness of assignment/covenants in which the amount of the judgment assigned has been determined by agreement of the parties," as such a settlement "may not represent an arm's length determination of the value of plaintiff's claim." *Id.* at 318, 799 P.2d at 92. The *Glenn* court adopted the following rule:

> We therefore hold that a settlement may be enforced against an insurer in this situation only if it is reasonable in amount and entered into in good faith. The initial burden of going forward with proofs of these elements rests upon the insured and the ultimate burden of persuasion as to these elements is the responsibility of the insurer.

*Id.* at 318, 799 P.2d at 93 (quoting *Griggs v. Bertram*, 443 A.2d 163 (N.J. 1982)).

Geico argues as a matter of law, as a basis for summary judgment, that the settlement agreement between plaintiff and the estate was unreasonable and was procured by fraud and collusion between Mr. Ball and plaintiff's counsel. Geico cites the circumstances of the agreement (no risk to the estate because of a lack of assets) as well as Mr. Ball's conduct as administrator, including his failure to consult with counsel; his reliance on plaintiff's counsel to provide the inventory of decedent's assets; his

sending a lawsuit filed by Ms. Wright to plaintiff's counsel instead of to counsel for the estate; his waiver of the attorney-client privilege; and his failure to bill plaintiff for his services as administrator.

The Court rejects this argument, as it concludes that plaintiff has met her initial burden and that Geico has not met its ultimate burden of persuasion as a matter of law. As plaintiff notes, liability was clear in this case, and the estate did not consent to a judgment of a particular amount, but instead left the amount of damages to the court, to be determined based on evidence. Thus, an issue of fact remains concerning the reasonableness of the agreement. Moreover, Geico has not established collusion as a matter of law, as plaintiff has submitted evidence from Mr. Ball disputing the collusion, providing explanations for the cited conduct, and alleging that counsel for the estate failed to communicate with Mr. Ball, his client. Accordingly, the Court rejects this basis for summary judgment in favor of Geico.

## IV.      Motion for Summary Judgment on Geico's Affirmative Defenses

Geico moves to strike plaintiff's motion for summary judgment on Geico's affirmative defenses, on the basis that plaintiff's arguments are addressed in, and therefore redundant of, the parties' other summary judgment motions. The Court does not find that plaintiff's motion was improperly filed, and it therefore denies Geico's motion to strike. Nonetheless, the Court agrees with Geico that its affirmative defenses have been addressed by the parties in the other motions. To the same extent discussed

above, the Court concludes that questions of material fact remain and that plaintiff has failed to show that she is entitled to judgment as a matter of law with respect to any of those defenses. Accordingly, the Court denies plaintiff's motion for summary judgment on Geico's affirmative defenses.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff's motions for summary judgment on her claim and on Geico's affirmative defenses (Doc. ## 81, 99) are **denied**.

IT IS FURTHER ORDERED BY THE COURT THAT Geico's motion for summary judgment (Doc. # 95) is **denied**.

IT IS FURTHER ORDERED BY THE COURT THAT Geico's motion to strike plaintiff's motion relating to Geico's affirmative defenses (Doc. # 104) is **denied**.

IT IS SO ORDERED.

Dated this 9th day of June, 2010, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge